IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JEANNE M. HENDERSON,         *
                                      *
      Plaintiff,                *    Case No.: 4:21-CV-00086-CDL
                                      *
v.                            *
                                      *
CHATTAHOOCHEE SLEEP      *
CENTER, LLC, a Domestic Limited  *
Liability Corporation, and LETITIA  *
HOUSTON, an individual, and     *
BRYANT HOUSTON, an individual,  *
                                      *
      Defendants.             *

**********

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MISTY M. WILSON,           *
                                      *
      Plaintiff,                *    Case No.: 4:21-CV-00088-CDL
                                      *
v.                            *
                                      *
CHATTAHOOCHEE SLEEP      *
CENTER, LLC, a Domestic Limited  *
Liability Corporation, and LETITIA  *
HOUSTON, an individual, and     *
BRYANT HOUSTON, an individual,  *
                                      *
      Defendants.             *

## PLAINTIFFS' JOINT MOTION FOR ATTORNEYS' FEES AND EXPENSES

In an effort to reduce requiring the Court to review two separate motions containing substantially the same caselaw and arguments, Plaintiffs in both of the above-styled cases jointly provide their consolidated request for fees and costs herein. A copy of this Motion has been filed in both of the above-styled cases.

COMES NOW Plaintiff Jeanne M. Henderson ("Henderson") in Civil Action No. 4:21-CV-00086-CDL and Plaintiff Misty M. Wilson ("Wilson") (collectively "Plaintiffs") in Civil Action No. 4:21-CV-00088-CDL and hereby files their Joint Motion for Attorneys' Fees and Expenses. Under the threat of possibly owing monies to Defendants as a result of the filing of offers of judgment and for other reasons [1] [2], Plaintiffs settled for amounts very significantly below what this attorney calculated to be what they were legally owed and for which this attorney spent numerous hours and deposition costs preparing to eventually prove

---

[1] Henderson wrote the following as some other reasons for accepting Defendants' Offer of Judgement: "[h]onestly just tired of going back and forth over a simple issue; no longer care to deal with [former] employers; and [s]atisfied that the company acknowledges wrongdoing."
[2] Wilson wrote the following as some other reasons for accepting Defendants' Offer of Judgment: "[t]he main reason I want to go ahead and settle is because of the time involved in continuing this case - I am very busy and I don't want to keep doing this for the next year; I have anxiety and I don't want the stress that is involved; I am possibly moving to a day shift position at work that would be difficult for me to take time off for the case; and my anger . . . has settled down some and I am ready to move on."

in either a motion for summary judgment or at trial(s). [3] [4]

COMES NOW Plaintiffs and respectfully request that the Court award their attorneys $74,697 in attorneys' fees and $3,661.35 in costs (filing of the Complaints, service to Defendants, and deposition transcription costs).

## I.    FACTUAL BACKGROUND

### A.    General Background.

On May 31, 2021, Henderson filed an overtime lawsuit [H1] against Defendants Chattahoochee Sleep Center, LLC ("CSC"), Letitia Houston ("Defendant Letitia Houston"), and Bryant Houston ("Defendant Bryant Houston") (collectively "Defendants'). [5] And on November 19, 2021 Henderson amended her lawsuit [H12] to include a charge of Breach of FLSA Regarding Defendants' Claim of Applicability of the Fluctuating Workweek.

On June 1, 2021, Wilson filed an overtime and retaliation lawsuit [W1] against Defendants. And on August 27, 2021 Wilson amended her lawsuit [W12] to include a charge [6] of Breach Contract asserting that Plaintiff and Defendants

---

[3] Henderson settled for $2,424 **vs $15,450.24 in actual estimated damage**s. (see Exhibit A – Email of 11/21/21 from from Plfs Lawyer to Dfs Lawyer)
[4] Wilson ultimately settled for $3,625 **vs $25,479.77 in actual estimated damages**. (Id)
[5] Another charge of BREACH OF ORAL CONTRACTS was effectively abandoned by Henderson
[6] Subsequently abandoned by Plaintiff but the applicability of the Fluctuating Workweek, as in the Henderson case, is denied.

had a verbal contract that she would be paid an annual salary of $40,000 for a scheduled three 12 hour shifts [7] per week which Defendants breached at times when it scheduled Wilson for four such 12 hour shifts in a workweek.

Plaintiffs were registered polysomnographers and worked as salaried sleep lab technicians for Defendants. Plaintiffs understood that their salary was meant to cover 3 night shifts per week and were upset at not receiving any additional remuneration when they were scheduled and worked 4 such shifts in a workweek. [8] [9] No evidence or assertion was ever admitted or produced during discovery by Defendants that Plaintiffs ever agreed to a fluctuating alternative method of compensation. In fact no evidence or assertion was ever admitted or produced during discovery that the fluctuating alternative method of compensation was ever even mentioned to Plaintiffs, never mind discussed. And, Defendant Letitia Houston in her personal deposition testified that the first time she ever heard the

---

[7] Although the schedule was for 12 hour shifts, it has generally been agreed that on average the shifts actually usually lasted about 11 hours. Therefore a 3 night per week shift required 33 hours and a four night shift week required 44 hours. Plaintiffs, through their attorney, were seeking additional pay for the 7 additional regular hours they worked on 4 night work weeks and for 4 hours of overtime on said 4 night work weeks.

[8] "I started full time on 3/1/2019 with 4 night shifts every other week with the understanding that after two months my schedule would change to 3 night shifts weekly as verbally discussed with Letitia Houston." (Henderson Declaration ¶ 4) (see Exhibit B )

[9] "Around April of 2019 during a mand[a]tory staff meeting we were informed by Latisha and Bryant Houston that we would be changing to a more traditional schedule, 3 nights a week with no scoring at home." (Wilson Second Declaration ¶'s 5-10) (see Exhibit C)

term "fluctuating work week" was "April of this year [2022]" (Letitia Houston Depo. pg. 147, 6-14) (see Exhibit D) Additionally, Plaintiff's were illegally treated as exempt professionals as they were trained and educated as technologists and did not qualify as learned professionals.

Henderson, for her part, prior to her voluntary resignation of her employment with Defendants effective February 2, 2021, initiated a federal Department of Labor investigation into the pay practices of Defendants (Wilson Declaration ¶'s 6-10) (Exhibit E) and texted Wilson on April 16, 2021, that the DOL investigator would be in contact with her (Wilson Declaration ¶ 9) (Id.). For her part Wilson was subsequently, beginning on April 30, 2021, in contact with the DOL Investigator, Sandra Bryant, and Defendant Letitia Houston  regarding her not wanting to work a 4th shift without additional remuneration. (Id @ ¶ 11- 21) And very shortly thereafter, on May 21, 2021, Wilson's employment was summarily and illegally terminated in retaliation for questioning the FLSA pay practices of Defendants and for her involvement in the DOL investigation.

Defendant CSC operates a medical facility sleep laboratory and its polysomnography staff perform specific tests during overnight evaluations to determine if clients have a sleep disorder. Defendant Bryant Houston is the owner of Defendant CSC, and his wife, Letitia Houston, is the Clinical Director of

Defendant CSC. Plaintiff's alleged and Defendants denied that both Bryant and Letitia Houston were "Employers" for purposes of these actions as both of them individually acted "directly or indirectly in the interest of an employer in relation to an employee." (29 U.S. Code § 203 – Definitions (d))

**B.  The Parties' Attempts To Engage In Settlement Discussions.**

On 9/20/21 Defendants in letters from their attorney, made settlement offers in the Henderson ($909.12) [10] and Wilson ($1,212.16) cases (see Exhibits G & H). Said offers were subsequently rejected outright in an email to Defendants' attorney on 9/27/21 (see–Exhibit I) as they were was based upon known or should have been known false overtime hours in the Henderson case. The hours used were those from the Defendants' originally promulgated monthly schedules which were in actual practice routinely changed to accommodate sickness and other reasons with the full and complete knowledge of Defendant Letitia Houston (see Exhibit J (30(b)(6) Depo. pgs. 71-74). For example Defendants' offer to Henderson was based upon an alleged 48 hours of overtime[11]. Even when Defendant's knew this information was false based upon documents produced by Henderson (see Exhibit K) and as subsequently proven more accurate when Defendants after much delay finally

---

[10] Subsequently increased to $1,600 on October 10, 2021; and $2,424 on November 17. Both subsequently rejected.
[11] This known false number of overtime hours for Henderson was fraudulently submitted to the Departmentj of Labor as part of their investigation. (Exhibit J)

provided accurate shifts-worked records as an attachment to an email dated 10/25/21 (Exhibit L). And despite this production of actual proof of the number of worked 4 night work weeks, Defendants' attorney, in an email dated 12/17/21 later claimed that the DOL lower estimate of Henderson's overtime hours based upon initial distributed work schedules effectively should be relied upon (Exhibit M) even though he knew that the records provided to the DOL investigator were not accurate as even admitted to by Defendant Letitia Houston (Exhibit I). [12] And, he even stated that Defendants have evidence to prove Henderson worked less hours than she claimed and less hours worked than Defendants own actual records finally produced show and would produce same at trial. By not earlier producing any such evidence is just another example of Defendants lack of good faith in these cases.

Additionally, and more importantly both offers were based on the after fact false assumption that the fluctuating workweek method was applicable.

And finally, Wilson's retaliation claim was dismissed out of hand and not taken into account in Defendants' settlement offer to her, when the reasons given for her termination were subsequently proven to be lies, lies that were even stated to the

---

[12] And, on 11/17/21 Defendants' attorney wrote in part
"This is well over the amount that the DOL believed Ms. Henderson was entitled to. My client's position as you know is that Ms. Henderson worked well under the number of hours and is entitled to far less than she claims (if entitled to anything), and plans to present evidence to that effect should this matter proceed to trial."

Georgia Department of Labor to successfully oppose Wilson's request for unemployment benefits.

In an email 0n November 4, 2021 Henderson made a settlement offer for $8K (see Exhibit N).

On November 21, 2021, Plaintiffs made settlement offers valued at less than 50% of what they could theoretically be awarded at trial. (see Exhibit A) Said offers were subsequently responded to with offers of judgment by Defendants.

On November 22, 2021 Defendants issued an Offer of Judgment for $2,424 in the Henderson case (see Exhibit O) which was subsequently accepted.

On December 6, 2021 Defendants issued an Offer of Judgment for $2,250 in the Wilson case (see Exhibit P) which after negotiation was raised to $3,625.00 and subsequently accepted.

Mediations were also scheduled for both cases. However, once Henderson made a settlement offer of $8,000, on a claim her attorney valued at $15, 450.24 (See Exhibit A), and after a conversation with the mediator that it was not economically prudent to spend thousands in fees to privately mediate an offer of $8,000, and it being obvious that Defendants were not budging from very low offers, Plaintiffs' attorney cancelled the mediations.

### C. The Number of Asserted Defenses and Defendants' Discovery Behavior Unnecessarily Led To IncreaseIn Attorneys' Fees And Expenses.

At first glance, based upon the accepted offers of judgment, Plaintiffs' attorney's request for fees and costs may seem excessive. Besides the facts that the offers of judgment were made at the tail end of discovery, and that it was Plaintiffs' decisions to not proceed further, there are further reasons for such fees such as 1.) the number of legal categories that had to be addressed 2.) Defendants' lack of responsiveness during discovery 3) Defendants' lack of candor during discovery.

Besides having to prove the asserted FLSA overtime violations, and in the case of Wilson an assertion of illegal retaliation as the cause of her employment termination, other issues asserted by Defendants needed to be proactively researched and addressed in ultimate preparation for responding to expected motions for summary judgment and possible trials.

### LEARNED PROFESSIONAL ISSUE

In the Sixth Defense to each of Defendants' Answer [H8] to Henderson's Complaint [H1]; Defendants' Answer [H14] to Henderson's Amended Complaint [H12]; Defendants' Answer [W8] to Wilson's Complaint [W1]; and Defendants' Answer [W13] to Wilson's Amended Complaint [W12], Defendants' response was:

"[p]laintiff's claims are barred because Plaintiff and/or Defendants are exempt from the overtime compensation provisions of the Act. By way of further defense and without limitation, **Plaintiff was exempt under the learned professional employee exemption.**" (emphasis added)

Interrogatory # 4 of Defendant Chattahoochee Sleep Center, LLCs ("CSC") First Request for Continuing Interrogatories to Plaintiff Wilson states "[i]dentify with particularity and in detail the legal and the factual basis for your contention that you "Plaintiff was a non-exempt employee for purposes of overtime compensation," as set forth in Paragraph 33 of the Complaint.

In her Response, Wilson Stated in part:

> [p]laintiff does not, and has never, [met] the legal requirements of 29 CFR § 541.301. Quite simply, Plaintiff's brief course of study in Polysomnography at Wallace State Community College, which earned her a "short term Certificate in Polysomnographic Technologist," does not meet element # 3 of the primary duty test 29 CFR § 541.301 which requires "(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." [13] [14]

(See Exhibit P1 )

---

[13] See also Wilson's lengthy end note as part of her Response to Interrogatory #4.
[14] A similar Response would have been provided in Henderson's case except an Offer of Judgment was accepted before Henderson responded to CSC's Request for Interrogatories to her.

## DEFENDANT'S BRYANT HOUSTON AND LETITIA HOUSTON AS "EMPLOYERS"

In the Second Defense to each of Defendants' Answer [H8] to Henderson's Complaint [H1]; Defendants' Answer [H14] to Henderson's Amended Complaint [H12]; Defendants' Answer [W8] to Wilson's Complaint [W1]; and Defendants' Answer [W13] to Wilson's Amended Complaint [W12], Defendants' response was: "[p]laintiff's claims against Letitia Houston and Bryant Houston are barred because **neither individual was an "employer"** of Plaintiff as that term is defined by the Fair Labor Standards Act (the "Act")." (emphasis added)

This Defense could not be ignored. Attached as Exhibit Q, is a list of all the Plaintiffs' bates labeled documents that much more than adequately support the fact that Bryant Houston was an "employer" of Plaintiffs. And, each of these listed documents were shown to and acknowledged as fact by CSC's 30(b)6 witness, Letitia Houston, at the deposition of October 27, 2021. Attached as Exhibit R, is a list of all the Plaintiffs' bates labeled documents that much more than adequately support the fact that Letitia Houston was an "employer" of Plaintiffs. And, each of these listed documents were shown to and acknowledged as fact by CSC's 30(b)6 witness, Letitia Houston, at the deposition of October 27, 2021.

# GOOD FAITH

In the Fourteenth Defense to each of Defendants' Answer [H8] to Henderson's Complaint [H1]; Defendants' Answer [H14] to Henderson's Amended Complaint [H12]; Defendants' Answer [W8] to Wilson's Complaint [W1]; and Defendants' Answer [W13] to Wilson's Amended Complaint [W12], Defendants' response was:

> "Plaintiff's claims are barred, in whole or in part, because at all relevant times, Defendants acted in a manner whereby they legitimately and in good faith had reasonable grounds for believing their actions with regard to Plaintiff were in compliance with the Act. Defendants raise all "good faith" defenses available to them under the Act. (emphasis added)

In each of Defendants' Answer [H8] to Henderson's Complaint [H1] item # 44; Defendants' Answer [H14] to Henderson's Amended Complaint [H12] item #55; Defendants' Answer [W8] to Wilson's Complaint [W1] item # 59; and Defendants' Answer [W13] to Wilson's Amended Complaint [W12] item # 61, Defendants' response was:

> "Defendants deny the allegations of [of each such Paragraph enumerated above]. By way of further response, Defendants show that, to the extent Plaintiff proves any lack of compliance with the FLSA, which these Defendants expressly deny, Defendants, as applicable, made a good faith effort to comply with theFLSA and are entitled to treatment under the law for such good faith."

In an email dated May 30, 2019 (see Exhibit S), Defendant Bryant Houston wrote

in relevant part to Plaintiffs and others that "[o]vertime with our firm [CSC] applies to employees paid on an hourly basis." This obviously is not an accurate portrayal of the law.

The only documents that Defendants produced to support that they made a good faith effort to comply with the FSLA were 6 pages that were introduced as Exhibit 27 to the 30(b)(6) Deposition (see Exhibit T).

As a result of deposition questioning, and despite being under oath, the witness testified that regarding the Exhibit 27 pages, "we printed them out in 2021" (Exhibit U) (30(b)(6) Depo pages 102-106) and "we made copies" (Id. pg. 104). When in fact during the 30(b)(6) deposition Plaintiff's attorney admitted that he made the copies.) (Id. pg. 102) Thus as part of discovery, documents that Plaintiffs were obviously meant to be led to believe were produced by Defendants from their records and were contemporaneous with their decisions re their pay practices were actually documents that were screen shotted by their attorney in 2021 and added into hundreds of pages of documents without disclosing their provenance. And regarding said screenshots, Defendants never asserted that the information in the screenshots from websites was the same as they allegedly consulted years before. Nor could they.

In any event, these documents and their contents in no way rise to the level

necessary to prove Defendants acted in good faith to comply with the FLSA.

## FLUCTUATING WORK WEEK METHOD

In retrospect, Defendants asserted the use of the fluctuating work week method so as to avoid paying Plaintiffs their legally owed wages. However, Defendants never produced any documents, testimony or facts to support that their was an agreement between defendants and plaintiffs that this method was in place. And, evidence showed that Plaintiffs knew they were not being paid properly and when Defendants did not change how they were paid, Henderson initiated a Department of Labor investigation which resulted in employees being paid back overtime. However, the fluctuating work week issue was not addressed. And when Wilson sought answers from the DOL investigator regarding how she was paid for 4 Night vs. 3 Night workweeks, Her employment was summarily terminated.

## FLSA ILLEGAL RETALIATION AGAINST WILSON

In Count II of her Complaint [W1], Wilson alleges that her employment was illegally terminated by Defendants for engaging in protected activity (29 USC § 215(a)(3)) when she participated with the DOL in its investigation of Defendant's failure to pay overtime as required and for engaging in protected activity when she complained of being owed back overtime pay.

Based upon information provided to it by Defendants, the Georgia Department of Labor denied Wilson's request for unemployment benefits as she "was fired for not properly notifying your employer when you were absent.

This provided information was false. Prior to her scheduled shift, Matthew Wilson, Plaintiff Wilson's husband, texted Defendant Letitia Houston on **May 18, 2021** stating "This is Matthew Mistys husband she is in the bathroom throwing up. Also her blood pressure is up. She is sick. She can't come she asked me to text u." To which Defendant Letitia Houston responded back quickly stating "No worries I understand I hope she feels better." (Declaration of Matthew Wilson dated 10/12/21) (Exhibit V)

Earlier on **April 30, 2021** Wilson had sent a to Sandra Bryant the Department of Labor Investigator  regarding being asked by Defendants to work an extra [a 4th shift that  week] and about getting paid extra.

Subsequently on or about **May 12, 2021**, in response to another email from Wilson, Sandra Bryant said she would contact Letitia [Houston]. (for a detailed time line of relevant events see Wilson's Declaration dated 10/9/21) (see (Exhibit E And, on May 21, 2021 Defendant Bryant Houston called Wilson to tell her she was fired. (Id. ¶ 48)

In all of its settlement offers and its Offer of Judgment, Defendants totally and

completely ignored to even mention or address Wilsons Retaliation Claim.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiffs Are Entitled To Attorneys' Fees Pursuant To 29 U.S.C. § 216(b) As The "Prevailing Parties."

Prevailing on "any significant issue in the litigation which achieved some of the benefit that the 'parties sought in bringing suit" compels characterization of that party as the prevailing party.  Texas State Teachers Ass'n. v. Garland Ind. School Dist., 109 S.Ct. 1486, 1493 (1989) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). "[A]t minimum, to be considered a prevailing party … the plaintiff must be able to point to a resolution of the dispute which changes the legalrelationship between itself and the defendant.  Hewitt v. Helms, 482 U.S. 755, 760 (1987).

Here, there is no dispute that Plaintiffs are the prevailing party in this matter. After approximately a half year of litigation, Plaintiffs agreed to Defendants' offers of judgment which included a provision that Plaintiffs were entitled to the recovery of attorneys' fees and expenses. As prevailing parties on their FLSA overtime claim against Defendants, Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses pursuant to 29 U.S.C. § 216(b).

**B.  The Lodestar Calculation of Plaintiffs' Attorneys' Fees.**

In determining an objective estimate of the value of a lawyer's services, this Court must multiply those hours reasonably expended by a reasonable hourly rate, or compute the "lodestar." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Kenny A. ex rei. Winn v. Perdue, 547 F.3d 1319 (11th Cir. 2008). There is a "strong presumption that the lodestar reflects a reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 380 Fed. Appx. 888, 891 (11th Cir. Fla. 2010) (internal quotations omitted); Webster Greenthumb Co. v. Fulton Cty., 112 F.2d 1339, 1349 (N.D.Ga. 2000). Courts have determined that "compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigation the request for attorney's fees." Weissinger, et al v. Murray, 2009 WL 1971612, *6 (N.D.Ga. July 2, 2009).

As detailed below, Plaintiffs' requested attorneys' fees are based on their attorney's reasonably incurred time in the case at his respective reasonable hourly rates. As detailed in Sec. I, supra, Plaintiffs' decided for their own personal reasons (see footnotes 1 & 2 above) to stop litigating this matter and accept Defendants'

offers of judgment.

## 1.    The Number of Hours Expended Were Reasonable.

In order to calculate an award of attorney's fees, the Court must first determine that the number of hours reasonably expended on the case and find that counsel exercised billing judgment.  <u>Hensley</u>, 461 U.S. at 434.  In other words, fee

applicants "must exclude from their applications 'excessive, redundant, or otherwise unnecessary [hours,] which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary.'" <u>Am. Civil Liberties Union v. Barnes</u>, 168 Fed. 423, 428 (11th Cir. 1999) (omitting citations).  However, counsel's certification that the work itemized has, in fact, been performed is "entitled to considerable weight on the issue of time required …." <u>Perkins v. Mobile Hous. Bd.</u>, 847 F.2d 735, 738 (11th Cir. 1988).  In fact, because counsel's sworn testimony is of such importance, in order for the time to be reduced, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." <u>Id.</u>

Plaintiffs' attorney has contemporaneously maintained records of much of his billable time and makes very conservative estimates on all other time entries which are attached hereto as Exhibit AA.

Plaintiffs' attorney further submits that he did not perform any redundant, excessive, or otherwise unnecessary work in the representation and that all of the work performed was reasonably necessary to properly represent Plaintiffs.  (See Attorney T. Martin Declaration, Attached. Exhibit BB).

In support of this fee petition, Plaintiffs' counsel has submitted his declarations detailing his work on the cases, in their professional judgment, the time spent was reasonable and necessary to the case.  (See Exhibit BB).  Prior to submitting this fee petition, Plaintiffs' counsel reviewed each time entry for both cases to ensure that he had exercised sound billing judgment when allocating and recording his time.  (Id.).

The attorney removed from the billing statement any entries he felt were duplicative or reflected hours not reasonably necessary for the effective representation  of Plaintiffs.    (Id.).

### 2.    The Hourly Rates Charged are well Within the Range ofPrevailing Market Rates.

A  reasonable fee award must  be  based  upon the  prevailing hourly  rate charged in the relevant market for similar litigation.  Blum  v.  Stenson,  465 U.S. 886, 895 (1984). More specifically, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by

lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. Plaintiff's attorney practices mainly in the Northern District of Georgia and has been court approved several years ago for his fees of $400 per hour. In the instant case, not being familiar with the prevailing rate in the Middle District has requested $350 per hour.

### 3.    The Johnson Fee Award Factors Find in Favor of Plaintiffs.

Once the lodestar has been established, the court can then determine whether any adjustments to the lodestar are appropriate. Hensley, 461 U.S. at 434. While the "lodestar" method effectively replaced the balancing test previously prescribed by Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974), the twelve Johnson factors "might still be considered in terms of their influence on the lodestar amount." Norman, 836 F.2d at 1299.

The factors guiding the determination of a fee award enumerated in Johnson include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the necessary skill of the attorney; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the attorney charges a fee on a fixed or contingent bases; (7) the time limitations imposed by the client or other circumstances; (8) the financial amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney;

the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in like cases. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n.2 (11th Cir. 2008).

- ***Reasonable Time and Labor Spent by   Plaintiffs'Attorneys:***

As discussed above, the time and labor spent by Plaintiffs' counsel was notonly reasonable but required in order to litigate this case.

- ***The Novelty and Difficulty of the Questions:***

Employment cases and FLSA cases in particular, consistently present both novel and difficult legal questions. Additionally, Plaintiffs' case was risky. Employment litigation requires specialized skill and Plaintiff's-side employment cases are considered difficult as there are only a handful of attorneys in Atlanta, who, like Plaintiffs' counsel, devote the almost all of their practice to these cases and have developed specialized skill and experience in the area.

- ***The Skill Requisite to Perform the Legal Service Property:***

In this case, a skilled attorney litigated this case. Plaintiffs' counsel not only handles almost exclusively plaintiff-sided employment matters, but mmany of the cases handled by Plaintiffs' counsel are FLSA matters. Plaintiffs' counsel has represented over 100 hundred plaintiffs in FLSA matters.

- ***The Preclusion of Other Employment by the Attorneys Due to the Acceptance of Case:***

This factor heavily supports the requested award. Defendants' raised numerous defenses, though doomed to succeed, needed much time and effort to address.

- ***The Customary Fee:***

As set forth above, Plaintiff has requested $350 per hour but obviously looks to the Court to set a rate lower to match the prevailing rate.

- ***Whether the Fee is Fixed or Contingent:***

In this case, the fee arrangement was contingent, because the amount of time required by the case was too great as to exceed the resources of Plaintiffs. Thereby, Plaintiffs and their counsel took a significant risk in pursuing this case.

- ***Time Limitations Imposed by the Client or the Circumstances:***

The time limitations imposed in this case came primarily from the litigious nature each step of this case required. Rather than work to resolve this case, Defendants elected to proceed to only recognize a small portion of the case.

- ### *The Amount Involved and the Results Obtained:*

The settlement in this case was well below what Plaintiff's attorney believes could have been achieved at trial."

- ### *The Experience, Reputation, and Ability of the Attorneys:*

Plaintiffs' attorney has submitted his declarations attesting to his experience and expertise in employment law litigation. (See Exhibit BB). Plaintiffs' attorney devote almost all of his time to plaintiff-sided employment litigation. In fact, much of the work handled by Plaintiffs' attorney is plaintiff-sided FLSA cases.

- ### *The Undesirability of the Case:*

Employment cases have been recognized as undesirable by members of the bar due to the undesirable scrutiny of the attorney's fee phase, the long delay and uncertainty in payment, the inability of most plaintiffs to pay for routine expenses and attorney's fees and because there is a big risk that the case will be lost at summary judgment without compensation or reimbursement. Furthermore, Martin & Martin, LLP has just two attorneys. The firm invested hundreds of professional hours in this case without receiving contemporaneous payment for any of them since Plaintiffs engaged the firm on a contingency fee basis. The firm can only

represent a small number of cases of the numerous inquiries from potential clients given the amount of time necessary to successfully prosecute employment cases.

- ***The Nature and Length of the Attorneys' Professional Relationship with the Clients:***

Plaintiffs' counsel has represented Plaintiffs since May, 2021. While in many other areas of practice, where a long professional relationship would carry the prospect of more business from the client in the future, Martin & Martin, LLP receives no such business from the long representation of its employment law clients. Instead, a plaintiff's employment lawyer has only the one fee they can expect from a client's case if they are successful. The Awards in Like Cases:

## III.    PLAINTIFFS' INCURRED EXPENSES

Plaintiffs' also seek costs in the amount of $**$3,661.35**, as itemized in the Bill of Costs for court filing fees; process server fees; and transcription costs for depositions.   (See Exhibit AA) Rule 54 of the Federal Rules of Civil Procedure provides, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs …should be allowed to the prevailing party."   Fed.R.Civ.P. 54(d)(1); see also 29 U.S.C. § 1920 (listing specific costs that courts may tax).   In addition to the specific costs under § 1920, courts have recognized other chargeable expenses:

[W]ith the exception of routine office overhead normally absorbed by

the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs … and the standard of reasonableness is to be given a liberal interpretation.

N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (1987) (quoting Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983)); see also ACLU of Ga. V. Barnes, 168 F.3d 423, 438 (11th Cir. 1999). "[A]ny expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988." Johnson v. Mortham, 950 F.Supp. 1117, 1126 (M.D. Fla. 1996). "The guideline on what is includable must be that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." Dowdell, 698 F.d at 1192. Thus, "[i]n this circuit the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costsmay be taxed when they are reasonably incurred; and there is no bar to complete recovery." Id. at 119; see Eason, 108 F.3d at 1365 (in FLSA matter, granting the plaintiffs' costs in their bill of costs of $6,313.65 plus an additional $15,872.21 inancillary expenses); Lee v. Krystal Co., 918 F.Supp.2d 1261 (S.D.Ala. 2013) (finding that "[u]nder the FLSA, costs include reasonable out-of-pocket expenses").

## IV. BILL OF COSTS

Plaintiffs seek a recovery of costs set forth in detail in the itemization to the Bill of Costs (Exhibit AA) filed concurrently totaling $3,661.35.

## V. CONCLUSION

For these reasons, and those set forth in the accompanying declaration, Plaintiffs respectfully request that the Court award the full fees requested of $74,69. Plaintiffs are also seeking $$3,661.35 in costs.

Respectfully submitted this 7th day of March, 2022.

By:   */s/ Thomas F. Martin*
Counsel for Plaintiffs
Thomas F. Martin
tfmartinlaw@msn.com Georgia Bar No. 482595Kimberly N. Martin
kimberlymartinlaw@gmail.com
Georgia Bar No. 473410

MARTIN & MARTIN, LLP
Post Office Box 1070
Tucker, Georgia 30085
404. 313-5538 Phone
770.837.2678 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| JEANNE M. HENDERSON, | * | |
| | * | |
| Plaintiff, | * | Case No.: 4:21-CV-00086-CDL |
| | * | |
| v. | * | |
| | * | |
| CHATTAHOOCHEE SLEEP | * | |
| CENTER, LLC, a Domestic Limited | * | |
| Liability Corporation, and LETITIA | * | |
| HOUSTON, an individual, and | * | |
| BRYANT HOUSTON, an individual, | * | |
| | * | |
| Defendants. | * | |

**********

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| MISTY M. WILSON, | * | |
| | * | |
| Plaintiff, | * | Case No.: 4:21-CV-00088-CDL |
| | * | |
| v. | * | |
| | * | |
| CHATTAHOOCHEE SLEEP | * | |
| CENTER, LLC, a Domestic Limited | * | |
| Liability Corporation, and LETITIA | * | |
| HOUSTON, an individual, and | * | |
| BRYANT HOUSTON, an individual, | * | |
| | * | |
| Defendants. | * | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing **Plaintiffs' Motion for Attorneys' Fees and Expenses** on all counsel of record via CE/ECF electronic notification as follows.

This 7th day of March, 2022.

/s/Thomas F. Martin